Mr. Day, on behalf of Aaron Ross, the appellant, we are here to challenge a court of appeals policy of the city and the Baltimore Police Department relating to where persons can protest, and in this case, leaflet, around an arena during the runs of the circus. The district court quickly ran through the significant interest test. It must serve a significant government interest, but the Supreme Court in Turner said that you have to do more than simply state the interest. You have to demonstrate the link between the interest and the activity, and here, the district court actually made the findings favorable to us that would support a lack of a nexus. The district court found that, historically, none of the demonstrators or leafleters had caused any issues, and that Mr. Ross, in this case, in 2008 and 2009, did not cause any impediments to pedestrian flow. Now, start me out, at least, in terms of what we're dealing with on this protocol. Did you stipulate that protocol is generally applicable? It's yes. Why? As a Monell policy. Say what? As a Monell policy in custom, it's generally applicable. We did not stipulate that the defendant officer enforced it in that manner. Oh, it's generally applicable. That's the way it's... But it's not a statute. That's correct. It's not an ordinance. It's something the police department put forth. How are you going to have notice of it? Well, that's correct, and certainly the district court had... Well, I mean, I know it's correct, but I want to know why you stipulated it was generally applicable. Is that the way it works? A police officer, a police department, or any department can just put forth a protocol, and now you lose the benefit of heightened scrutiny. It's now intermediate scrutiny because it's a protocol like a statute. You treat it like a statute or ordinance. So you don't need the legislature anymore. No, I would say that the deference that the court grants the policy can depend on whether or not it's a statute or whether it's a generated policy by the government. What case has done that? What case has said you can... not enact, can put forth a protocol when something happens, and then you've got to follow it from then on, and you can take away First Amendment rights, and that's enough to validate that as a generally accepted protocol. What case has done that? I mean, all of them look like to me either has a statute or ordinance or something where you put it forth in a legislative-type venue where people have notice of it, somewhere where you can have a knowledge of it, but your client didn't even know this thing existed until he went in, did he? Right. We didn't realize it existed until in the middle of the officer's deposition he pulled it out. How were you going to know it? I mean, you're supposed to know every time a protocol is put forth by the police department. And that's certainly an issue. I don't know that that necessarily relates to... I'm not sure it is, because you said it's generally, it's a generally recognized one. No, I would say that whether or not it's generally applicable isn't the end of the inquiry. Generally applicable, all that it means is that the police department drafted it and intended for it to be enforced in a manner that was applicable to all protesters, not just people who are protesting against the circus. That was the only stipulation that we made. What level of scrutiny applies to that? Is it different from an ordinance, or is it what a police officer can do, can go in now and just make these protocols and then everybody has to follow them? I would say it is different. The Fourth Circuit in Cox v. City of Charleston, South Carolina, did discuss this issue somewhat in stating that the appropriate authority for deciding... The Fourth Circuit said that you have to have a small group exception to restrictions on sidewalk use for protest. But that was the permit requirement case, wasn't it? That's correct. Though that's not... I would say that the restriction here is even worse, because here you can't even get a permit to use this restricted area. He wasn't trying to get a permit. There's no permit issue in this case. That's correct. There's no permit issue. I would say that the restrictions by the city and the police department are even more severe because you cannot protest in this area, period. You can't even get a permit to do it. I don't think it lessens... But you can protest just a few feet away from the door to the circus. I mean, at least from my looking at the record and looking at that stripe down the sidewalk, you really have access to all the people coming to the event pretty well along their traveled route to the door. It's just that you're, what, 13 feet away from the door? And 13 feet away is too much for a leaflet. We don't challenge it as applied. Well, from the door, but you can certainly approach people as they're walking up the sidewalk if they want to take your leaflet, can't you? If they're not within arm's reach, it's not realistic. At the appendix, page 244, we show a snip from the videotape showing Mr. Ross attempting to leaflet from that area. No one is going to walk... Well, very few people certainly are going to walk close enough to be able to leaflet those persons. The burden is not on Mr. Ross to justify why he needs access to this area. The burden is on the defendants. Are you saying you have to be able then to reach people with leaflets in order for it to be a reasonable time, place, and manner restriction? I think that question goes to whether or not the policy leaves ample alternative channels of communication. And a central issue here is, does protesting, picketing, holding a sign, chanting, is that an adequate substitute? Is that interchangeable with being able to hand bill? The Supreme Court in the abortion clinic line of cases, they have separately analyzed the effect of regulations and injunctions on hand billing. In the case of Schenck, the court looked at two buffer zones. One was a buffer zone around individuals, and the other was a buffer zone around the entrance. And the Supreme Court decided that they struck down the buffer zone around individuals because of its impact on leafletting. In other words, it wasn't a substitute to be able to stand eight feet away and protest. They individually looked at the effect on hand billing, which is a traditional method of communicating, an inexpensive, non-confrontational way to interact with people. Did you ask the trial court to rule separately on this issue of leafletting? We did. Where in the record is that? Can you help me find that? Well, I believe that, well, I would say in our brief. Certainly that's how we have always looked at it. Right, but no, not in your brief, but where in the record does it show that you asked the trial court to specifically address the ability to extend a leaflet to somebody as opposed to simply protest and make your case verbally to people passing into the circus? It would have been in our trial memoranda. Do you have the record site to that?  I can certainly provide that. And certainly when the court in the decisions discusses ample alternative channels of communication, it addresses my issue and my point that the court should separately analyze the impact on leafletting and that we consider them to be distinct. The Supreme Court in the Schenck case also looked at a fixed buffer zone around the entrance and upheld that, but also noted that the buffer zone around the entrance allowed for two sidewalk counselors to be within that entrance area. In the case of Hill v. Colorado, again, the Supreme Court separately looked at the issue of hand billing, the effect that regulations had on hand billing, and also they upheld a fixed buffer zone there as well around the clinic, but noted that like in Schenck, one might be able to stand right at the entrance and be within arm's reach of people to be able to hand bill. And I would also note that the court has given more deference to restrictions on abortion clinic cases. The court decided three reasons. One is that they involve access to medical care. Number two, that there is a history of tumultuous conflict at such locations.  Also, the Supreme Court in Lee v. Iskcon and Iskcon v. Lee, they analyzed some restrictions on activities within airport terminals, and the court issued two opinions. The first opinion dealt separately with the impact with the ban on peddling and soliciting and allowed the ban on soliciting and peddling. And in the case that involved, it was a part two of the case dealt with hand billing and struck down the restrictions on the hand billing, and they adopted Justice O'Connor's concurring opinion in the first part in which she explained the hand billing is less obstructive. Hand billing just involves passing a hand bill to someone. They can take it or reject it and they move on. They don't have to look at it. Whereas peddling requires a person to stop, look, consider whether or not they want to buy it. If they do want to buy it, get money out, make an exchange, get a receipt. Yeah, and the court definitely did address the leafleting aspect. I think in fairness to you, I need to say that. But the court, when it was addressing it, wasn't it concentrating on the issue of pedestrian congestion as a basis for the reasonable restriction that was being placed in the court's view? You know, there had been problems with that PETA incident back in 2003. These circus events were frequently taking place at rush hour when people were leaving their offices. The court was pretty concerned about that. And so how does that weigh into your argument today? How do you counter that concern of the court? And why doesn't it make a difference as far as you're concerned? Well, we're talking about one incident in 2003 relating to a permit that was issued for a permit. Right. But beyond that, let's forget the PETA incident. But the court was saying, look, this is rush hour. You know, people are leaving their offices frequently when these circus performances are coming. What, 6,000 to 8,000 people come to see the circus? A lot of people, thousands. And so we're having a real crunch of people back and forth, and there has to be some regulation because of this issue of pedestrian congestion and safety. So why did the court overstep its bounds in relying on pedestrian safety and congestion in saying it's okay to draw that line down the sidewalk? Well, the court stopped the analysis at they have an interest in controlling the pedestrian flow. But the court actually found in our favor, on pages 8 and 9 of our brief where we cite the district court, the court found that the city never was able to articulate any problems caused by any of the protesters or leafleters, that no one can cite any examples of pedestrian issues prompting the need for the so-called protocols sidewalk restrictions. The court also found that Mr. Ross never obstructed anyone. With those findings, it should have been enough to not find that there was not a significant government interest. The problem is the district court simply stated the interest, they have an interest in controlling the flow of pedestrian traffic, but never analyzed whether or not the activity threatened that interest. The Supreme Court in Turner and the 6th, 7th, and 9th circuits in Sayegh, Cuba, and Weinberg all say that you have to do more than just state the interest. You have to do more than come up with hypothetical and conjectural ways in which the activity threatens the interest. In this case, the court did find that basically the defendants were relying solely upon the but did not apply the right analysis. Never went further in the significant interest test than just asking whether or not they had a significant government interest in controlling the flow of the sidewalk. Similarly, in the narrowly tailored analysis, the court found that... Tell me what level of scrutiny the judge here applied, intermediate level of scrutiny. Do you have a problem with that? The judge applied one test if the policy was like an injunction and found that it was not constitutional and not narrowly tailored because it burdened more speech than necessary. That's a different level of scrutiny than if it's like an ordinance or a statute. Right, if it's more like an... It looks like the judge sort of determined this is more like a statute. Actually, the judge determined we would need to put it to a jury and see whether or not it was generally applicable or applied just for... That's when you stipulate it. That's correct. That's what we stipulated. That's when you applied the intermediate scrutiny. I would say it fails even under intermediate scrutiny. That's not my question. I want to know what level of scrutiny was applied here. Are you in agreement with the application of intermediate scrutiny? I would say under the reasoning of the district court and under the stipulation, we would apply intermediate scrutiny. Why? It fails under intermediate scrutiny. What's statute like about this protocol? I'm sorry? What is statute like about this protocol? Why? Well, I wouldn't agree with the district court's premise in that that's the difference. I think... Wait a minute. What's the difference? Don't lose me. The district court found that... Applied this test to determine whether or not it's more like an ordinance versus a statute. He applied intermediate scrutiny because you stipulated that it's a generally applicable type protocol or that's like a statute. If he'd done injunction, it would have been different. It would have been a heightened level of scrutiny. But he didn't do that. He applied the intermediate level of scrutiny, and you stipulated to that. And I want to know what in the world makes this protocol in HEAL and in the Schenck case, those are statutes. I mean, those abortion statutes are all there. And even in the cases throughout, the Ward case, it looks like it says promulgated. There's nothing promulgated here. I would agree with that. You have a protocol, and that protocol is what you've got a chief legal counsel right there in the police department that told you this thing is not what you ought to be doing. You've got to know when there's a violation. There's a reason for that. You're talking First Amendment speech. So I'm not following your argument if you don't deal with this level of scrutiny here because I'm having a problem with the level of scrutiny that the judge applied because I'm not convinced at this point, maybe I will be before it's over, this is a statute or it's a statute like ordinance. This is a protocol. Somebody went in the back room and got a law firm or something to draft up and then put out. What in the world makes that promulgated or makes that legislative as it is in HEAL and CHINC and all the other cases? But you stipulated that it is. I stipulated that it was generally applicable, which is the basis principle seeing something as a statute-like type thing. I didn't necessarily agree with that part of it. That was certainly the application of it. You said it was a jury question and judge says, well, it's either a junction or a statute, and then you stipulate it, then he went to some judgment. Correct, using the district court's reasoning. I don't necessarily agree that it's like a statute. Well, you're arguing no on appeal within the intermediate scrutiny. That is correct. So you've accepted that for purposes of the case? I contend that it fails even under intermediate scrutiny and the district court did not apply. I understand it does, but why are you saying it's intermediate scrutiny? I still contend it matters. I still contend in the First Fourth Circuit it matters if there's more deference given. But you don't apply that to something that has an injunctive, junction-like character. You get a higher level of scrutiny. In other words, you've given up what may well be something you're entitled to. Maybe not strict scrutiny, I don't know, but certainly heightened scrutiny. If it's not an ordinance or a statute, then there's a strong argument. Because otherwise you're just letting police departments go out and set up protocols, and all you get is a lower level of scrutiny, a First Amendment speech. Content-based. I would say under Fourth Circuit precedent, it doesn't get the same deference as a legislative act. I did not, the question is whether or not I would agree with the district court's test as far as, okay, if it's generally applicable, it falls down the injunction. I'm sorry, it falls down the statute. You've already agreed that intermediate scrutiny is sufficient, is okay. Well, maybe with an asterisk. The Fourth Circuit, again, has given more deference to legislative acts than to... It's not a legislative act. That's correct. And that's my argument, that they've given more deference to legislative acts than to police policies as we have here. I simply do not agree with the district court's test. I stipulated the test because based upon the judgment that we already had, that was the way it was going to go. But I don't necessarily agree with that test for determining whether it's injunction or a generally applicable statute. I think what we have here is a police policy, and I don't think that gets the same deference as a statute, as a legislative act. I'm well into my rebuttal time now. But once you say it's generally applicable, I'm not sure that's called an injunction. That's a whole different ballgame there. I wouldn't necessarily agree with that, that that's the test. That we have to show that it's targeted at animal rights activists for this to be like an injunction. That was certainly the reasoning of the district court, but I wouldn't necessarily agree with that. I think there's a heightened test. I think the Fourth Circuit and Cox set forth that pretty clearly, that if it's a legislative act, it gets more deference. There was no test about it being generally applicable or being targeted. This is what it was, and it certainly was a policy by the police department, not a statute. Thank you. Thank you, sir. Mr. Potter? May it please the Court, I'm Steve Potter, representing the Mayor and City Council of Baltimore. I will be addressing Counts 5 and 11. The plaintiff challenges the protocol enforced by Officer Early against Mr. Ross, who claims a constitutional right to go anywhere he wants to to hand out leaflets. As the Court noted in 2004, police officers asked the City Law Department for advice about... Let me make sure I understand that. Does he not have a constitutional right to pass a leaflet on a sidewalk? In general? In general. Public sidewalk. On a public sidewalk, it's a... Doesn't he have a constitutional right to pass out a leaflet? Yes, he has a constitutional right to pass out leaflets on sidewalks generally. Yes. It's a public forum. You can't take that away unless you've got some level of scrutiny that you meet that will allow you to prohibit him from doing so. We agree that intermediate scrutiny applies. You may agree with it, but tell me why you agree with it. Why does intermediate scrutiny apply here as opposed to a heightened scrutiny? This is... To this protocol? Yes. Yes, Your Honor. So... It's not a statute, is it? No, sir. It's not an ordinance? No, sir. Ever been put out on any type of notice or vetted by anybody other than just the police department pulled it up? The city's law department was providing legal advice. Police officers were actually being proactive. They wanted to know what they could do to maintain public safety and order on this sidewalk. This is not just for one incident or something you found out. This is for every time anything happens here. It's generally applicable. It has the same force of a statute if a city can do this. So what? I mean, so any time the law department goes and draws up something, that has the force of a statute? So there's no difference? What officers are often faced with is they're faced with making ad hoc decisions. Ad hoc decisions. Excuse me. Just a minute. Let me make sure. I want to talk law. I agree with you. Officers are faced with tough stuff. I want to talk about the First Amendment. That's where I'm going. Because it looked like to me what was done here, your chief legal officer told you basically this is not the way you do this, and yet they did it. But I'm having some problem when the law department goes and draws up something, and it then becomes, it restricts First Amendment rights for everybody, and it's treated like a statute. So there's no limit to what a law department can do for the pretty powerful lawyers in this police department. Officers restrict people's rights to engage in protected speech in order to protect the significant interests. For example, for public safety, for pedestrians. The officers wanted to know what they can do that would be legal. They wanted to do something that would meet intermediate scrutiny. And so they sought legal advice proactively in advance. The officers wanted to know what they could do to meet intermediate scrutiny. No. Why would officers want to know that? Now we're not talking about the officer's immunity. We're not talking about his immunity. We're talking about First Amendment. His immunity is a question of whether, I mean, it seems reasonable in a sense what he did. He's following the protocol. I'm focusing on this ordinance. This is so-called protocol. Yes, sir. And the level of scrutiny that you apply to a protocol and what case out there has yet to say that a police department can go to this law department and say, draw me up something here because we've got a problem down here, and we're going to apply this thing generally. And it will have intermediate scrutiny as opposed to if you had an injunction or something like that, or instead of it's going to be like a state statute or it's going to be like a city ordinance. What case says that? The cases state the officers go in and they start making inconsistent ad hoc determinations as to what is, what restrictions they will impose on different protesters. And then they get into trouble because they're not well thought out. Of course they don't know what's lawful and they're applied inconsistently and unfairly. But you know, it's lawful for him to stand on that sidewalk and pass a leaflet out. It's not like what this protocol was developed for. You had a vehicle and all that. You're not talking about a few of the people here who's standing out there blocking traffic, Donna he's out on, he's out on the street, passing a leaflet. I mean, you can do that. Can't you? Your honor, the analysis is not based on one person handing out a leaflet. The analysis is based on if everybody who was engaged in a protected activity in a public forum at that time, chose to do exactly as the plaintiff chose to do. And we know for a fact that there were multiple people there. We have photographs of it, in fact, in the record. And if everybody chose to leaflet within wherever they chose on the sidewalk, we would have a significant threat to public safety. As the judge noted, seven to 10,000 violation of some statute of ordinance to say you are prohibited of impeding. That's a statutory violation. This has nothing to do with this. That this is a protocol. Totally different. I follow you on that. You're right. You got people out there passing up, blocking, causing a traffic problem. There's a statute or there's a signal audits. It says you can force, or you guys, people got to get off the street. You know, you can't do this because you were doing things here that safety and that sort of thing. That's different. Protocol is a policy. It doesn't matter whether or not he's out there doing that stuff. He's in violation of protocol that hasn't been enacted by anybody. That's different. And it's the level of scrutiny we're talking about here. Now, I'm not saying you couldn't do that, but it, but, but the question becomes, why would you not have the hyphen level of scrutiny as opposed to an intermediate level of scrutiny? Mr. Ross was not charged with any kind of violation of the protocol. He was only charged with failing to obey a lawful order. He was asked many times, sir, please move behind the brick pave line, something objective, an objective line that could be implied consistently and fairly. And he chose. Established by the protocol. That is correct. But he is in violation of the protocol. And that's how the charge arises. Correct. I believe he, the charge arises for failing to pay a lawful order, which is the based upon a failure to follow the protocol of being right. The restriction on water. If you don't have the protocol, pardon? If you don't have the protocol, you don't need to know you don't, you have no order. You got to have a protocol says, Hey, lines here. You can't go here. I guess the point your honor is that. Is that when the officer asks Mr. Ross to move to the side, move to move to move behind the big pave line, which I understand is the protocol. It's not. It's not. It's not the fact that it was established by the protocol. It was the fact that he chose to disobey officer early is lawful order. That is the charge. Someone to give up a constitutional right. He has a constitutional right to stand out there, pass out a leaflet. You tell him, stop that. Be my order. Get out of my, get out of here. What's lawful about that? Your honor. And no, at no time, was there any ban on Mr. Ross leafleting on the sidewalk? The question was more question of Mr. Ross. You please leaflet on the uttermost half of the sidewalk. He doesn't have to. He has a constitutional right. And this court in green upheld an outermost half side of the sidewalk restriction where they said that thought that it was at a protocol or ordinance in green. I believe that that was passed as an ordinance or a protocol here. Yes. I understand that a whole different thing. If you talk ordinance, don't tell me about green. Tell me about a case. They have the protocol in it that nobody has passed except your law department. Well, there's there cases cited in I believe is one. And I believe there were several that are cited in our brief, the concern restrictions on protected speech on a public forum that are not based on that are not based on ordinances. And in fact, in those, those are heightened scrutiny cases. I, I do not believe so. I believe they're intermediate scrutiny cases. And in fact, defending animals today and tomorrow, let me have the site for the case. You have one point. Think about it intuitively. Think about it intuitively. When you have speech and you have a police department, go to his law department and create this kind of generally applicable protocol to restrict speech. Is that the way it's done? When you, when, when, when the case law is focusing on the legislative and the fact that been through the whole process, the back and forth that goes through legislative process and how it comes up, they consider the policy aspect of it and then they promulgate it for as an ordinance or a statute. And even in that instance, what it gets is it doesn't mean as good as it has to meet heightened scrutiny at that time or intermediate scrutiny at that time. But, but if you don't do it, you got to meet a higher scrutiny because it hasn't been through that legislative process. And here to judge, put it in immediate scrutiny, which is fairly low for taking away a constitutional right of speech. And what has been pretty tough on this speech stuff. Now I'll tell you that. Well, Your Honor, we don't view it as taking away someone's constitutional right to speech for only rec. It's only a time, place and manner restriction on protected speeches, only being asked to move a few feet away. In fact, I am more than 15 feet away from you now, and I'm not having, I do not think that I'm having trouble communicating with you. Right. But Mr. Ross's point is I can't reach those people with a leaflet. Understood. Your Honor may be able to hear me, but I can't reach them. Yes. Yes, Your Honor. And that would fall under the alternative channels of communication aspect of it. And in fact, and in fact, the, it's not required. There's no law that says, and we would have it if there were, that anyone, there's a special right for leafletters. There is no special right for leafletters. The question is whether the person has the right to communicate effectively. And clearly, Mr. Ross does have an effective right to, and right to communicate. And he can't communicate effectively. What page of your brief were you looking at when you were responding to Judge Wynn's question a bit ago? I was looking in the table of citations. Okay. And so what citations in particular respond to Judge Wynn's question about the protocol? What occurred, there were, I believe there may be other cases, but what immediately occurred to me was, was the was, I believe Menotti may have been a policy case. And I, I'm, and I'm sure that defending animals rights today and tomorrow, which is cited throughout the brief, 821 Fed stuff. Second 97 was clearly a policy case. Again, asking animal rights protesters to move a few feet from entrances from the innermost half of the sidewalk to stand on the outermost half of the sidewalk. So Menotti, wasn't that a, that was an emergency order. I believe, I believe that that was a plan placed in advance by law enforcement to manage anticipated protests. And, and I think the outcome was that it wasn't narrowly tailored. I believe that it passed intermediate scrutiny, Your Honor. Okay. Go ahead. And, but I think the other point is that with regard to the leafletting is that Mr. Ross's preference for offering leaflets doesn't mean that the other avenues of communication are inadequate. He just doesn't have a right to be within arm's reach. In fact, under inhale of the Supreme court said unwilling listeners on a sidewalk have the right to avoid unwanted communications and, and they have the right to pass without, without their paths being obstructed. And essentially that is what we're providing a narrow corridor for pedestrian safety in order to allow pedestrians to, to pass without obstruction with the minimum, amount what we view as a minimum amount of interference in his rights. There's no barriers. The Mr. Ross has access in terms of being audible placards. He can offer leaflets, maybe not to every single person, but, but he is, but they are, all people are available to him. They are, if someone chose to approach Mr. Ross, they would be able to accept, accept leaflets out. And in fact, be able to leave the area because there are no barriers. Well, let me ask you about your reliance on the minority case that involves them involved in emergency order. Did it not? I believe so. And the court applying intermediate scrutiny. So isn't that different when you have an emergency situation rather than what we've got here, um, or something that was developed over time was given. What there are, there are, there are other cases in the brief that consider, um, anticipated protests that are not ordinances. And, and, and not, he may well be an emergency order, but it was not an ordinance. Um, and I think the point is we don't have to have, as we describe it, we don't have to have blood on the pavement in order to impose some sort of, um, modest restriction, um, a protected speech in order just to record or prior restraint is a protocol of prior restraint. Um, we do not view it as a prior restraint because we are not limiting anyone preventing anyone from engaging in protected activity, certainly not even preventing protected activity on the sidewalk, only on the innermost half of the sidewalk. And in fact,  sidewalk. There's still communication with those people. Um, all right. I've seen him. I'm into Mr. Mr. Thank you. Thank you. Mr. Ross. Oh, I'm sorry. Excuse me. I apologize. Mr. Stroud. Thank you. Thank you, Your Honors. Barron Stroud on behalf, uh, may please the court. Uh, I'm Barron Stroud of, uh, on behalf of, uh, officer Wayne early, one of the respondents, uh, officer early is entitled to summary judgment as the court found, regardless of this court's determination of the constitutionality of the protocol. And the reason is that, uh, the undisputed facts establishing probable cause in this case, he was just following what was written in front of them is what you're saying. Well, and that just makes sense. I mean, he's an officer and they put it up forth and the district court, you know, went in that direction. So you seem to have a pretty good argument, don't you? Well, at least for officer early. Uh, yes, Your Honor. In fact, and the plaintiff stipulated that the officer, uh, was following the protocol in this case. Uh, in the record, you got a whole different case than your partner has in terms of officer early. I mean, his, his case is more direct in terms of why he did what he did. He's doing what he's told to do. And he has, he has a lot of folks out there think that what he's doing is okay. The focus in evaluating an officer's conduct is, is his good faith is his reasonableness of his conduct. Absolutely. Your Honor. And tell me, is the Baltimore police department, a state agency or city agency or what is that? Your Honor, on officer early's behalf, I can't answer that question. It's who knows the answer. I'm having a hard time figuring out what is it, a state agency or what, because it looks like it was that you wouldn't set up one. So the state made one for you. And if so, it may be a reason you don't bring the 11th amendment in that argument. But I, I was curious about that council for the, for the Baltimore city defendants might be able to address that question. I mean, Mr. Early doesn't really have a position on that. His focus in this case was the conduct that led to, to his arrest, to Mr. Early's, to Mr. Ross's arrest. And, and it's very straightforward here. I mean, the, the analysis is very straightforward. Probably cause looks only to the facts known to the officer at the scene. And, and in this case, on both occasions, Mr. Ross was requested on multiple occasions to step back from the paths of ingress and egress on, on multiple occasions, refuse those orders, sometimes moving from location to location on both dates, on multiple occasions. Thereafter, officer early, exercising the greatest care requested that still requested for the compliance, still gave him further opportunities to comply. And in each instance, the, the plaintiff and petitioner here ultimately said, I hear you. I'm not going to leave arrest me in different words. And in each instance, he was in fact arrested, but only after all of those steps, steps were followed. So there can be no question that, and as much as probable cause relies on the facts, unequivocal facts and undisputed facts. In this case, probable cause vitiates, uh, fourth amendment liability. It vitiates liability under the first amendment in this case. And, uh, and it vitiates liability under the state law claims. Um, I can't speak for the other judges, but it seemed like to me, you've got a pretty straightforward case. Thank you. I have nothing further to add. Thank you, sir. All right. Now, Mr. Ross, um, you did use up most of your time, but I think in fairness to you, uh, you, you spend a good deal of it answering the court's questions. So I'd ask you to take three minutes, uh, and, uh, and give us your rebuttal remarks. Thank you. Rather than the 20 seconds that I think you might have. Uh, and, and judge Keenan, uh, you had asked about, uh, where in trial memorandum I had, uh, addressed the issue and it's actually in the joint. And I found it. Thank you. Okay. Pages 113 to 117 of the joint appendix. Uh, I wanted to address the, the green case. The green was another fourth circuit case. The, uh, fourth circuit and green struck down as facially invalid, the outer, uh, perimeter restrictions on sidewalks without a small group exception. And the court upheld it as applied to large groups, which the legislature in that case had determined was 10 or more. And they deferred to the legislature. And if I may clarify, we were having discussions about strict scrutiny versus intermediate scrutiny. Uh, and again, I have not conceded that it's entirely intermediate scrutiny. The fourth circuit has said that the court owes less deference to police policies than it does to legislative. You did argue intermediate scrutiny in front of judge Mott's and that's how he analyzed the case and decided it. So how can we change that now? Um, judge Mott's argued both ways and he applied a test to determine which way it went. And I dispute that that test is the proper way to do it. Now, the fourth circuit in Cox gave less deference to a policy of the police department than it did to a legislative act. The four circuit did not call it anything, did not call it strict scrutiny versus intermediate scrutiny. I don't know how we have to call it anything necessarily, but certainly the fourth circuit has said we owe less deference to the police policies, uh, than we do to legislative acts. And here we clearly, you can call it whatever you want, but we clearly have a police policy. Uh, what I never agreed with, uh, was the test that the court was applying to determine which way it went down or necessarily that those were the right tests being applied. And actually the district court never even applied an intermediate scrutiny test. Uh, the court struck it that considered it invalid as an injunction under strict scrutiny, but never asked the other question under intermediate scrutiny, does this burden substantially more speech than necessary? Never addressed that question. Um, and if there are no other questions, if I've clarified that, um, thank you. Yes, sir. Thank you. Thank you. Uh, court will come down to Greek council and then proceed to our next case.
judges: Barbara Milano Keenan, James A. Wynn, Jr., Stephanie D. Thacker